IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al., <br>           Plaintiffs, <br> vs. <br><br> WATTERS PAINTING, INC. dba WATTERS PAINTING AND DRYWALL, INC., et al. <br><br>           Defendants. | Civil Action No. JRR-22-2571 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

This matter was referred to me on July 17, 2023, for a Report and Recommendation on the Motion for Default Judgment (ECF No. 16) filed by Plaintiffs International Painters and Allied Trades Industry Pension Fund; International Painters and Allied Trades Annuity Plan; Terry Nelson; Finishing Trades Institute; and Allied Trades Joint Apprenticeship and Training Fund (collectively "Plaintiffs" or "the Fund"). ECF No. 17. Defendants Watters Painting, Inc. (*dba* Watters Painting & Drywall, Inc.) ("Watters Painting, Inc.") and Matthew Scott Watters (collectively "Defendants") have not filed an opposition and their deadline has now passed. No hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons discussed herein, I respectfully recommend that Plaintiffs' Motion (ECF No. 16) be GRANTED and that damages be awarded as set forth herein.

### FACTUAL BACKGROUND

Plaintiffs allege that Watters Painting, Inc. and Mr. Mathew Scott Watters failed to make contributions as required under the Employee Retirement Income Security Act of 1974 ("ERISA") and governing contracts. ECF Nos. 1, 8. At all relevant times, Defendants employed members of local labor unions or district councils affiliated with the International Union of Painters and Allied

1

Trades and agreed to abide by a Collective Bargaining Agreement ("CBA"). ECF No. 8 at ¶¶ 11, 14. The CBA, and the Declaration of Trust ("Trust Agreement"), establish and maintain the Pension Fund. *Id.* at ¶¶ 12-13. The International Painters and Allied Trades Pension Plan and the International Painters and Allied Trades Industry Annuity Plan are "multiemployer funds" and "employee benefit plans" as defined by ERISA. *Id.* at ¶ 1. Plaintiff Terry Nelson is a fiduciary of the Pension Fund and the Annuity Fund within the meaning of 29 U.S.C. §1002(21) and is authorized to collect contributions and other amounts owed. *Id.* at ¶ 4.

Under the terms of the CBA, Defendants are required to remit payments to the ERISA Plaintiffs, the Bargained Entities, and the Union every month. *Id.* at ¶ 12. The exact sum of each contribution is determined by the number of hours worked by Defendants' employees. *Id.* Should payments be delinquent, the CBA provides for liquidated damages as well as interest accruing from the day contributions become delinquent until paid. *Id.* The CBA also requires that Defendants maintain certain payroll records and to submit all relevant records to Plaintiffs for examination. *Id.* at ¶ 13. Should an audit reveal that Defendants have failed to provide full and prompt payment, Defendants must reimburse Plaintiffs for the amount due, including audit fees and attorneys' fees. *Id.*

According to the Amended Complaint and Plaintiffs' Motion, Defendants failed to remit payments to the Fund for certain months between September 2014 and November 2020 and March through May 2023. *Id.* at ¶¶ 14-16; ECF No. 16-2 at 17. Defendants also have contribution balances for the months of May 2022-August 2022, October 2022, and January 2023. ECF No. 16-2 at 17. Plaintiff requests that this Court issue a judgment for: (1) any unpaid contributions (including estimated contributions for any months Defendant fails to report to Plaintiffs); (2) liquidated damages; (3) interest; (4) attorneys' fees; and (5) injunctive relief ordering Defendants to submit

to an audit of their payroll records. ECF No. 16-1.

## PROCEDURAL HISTORY

On October 6, 2022, Plaintiffs filed a Complaint against Watters Painting, Inc. in this Court. ECF No. 1. The Complaint, Summons, and Civil Cover Sheet were served on Watters Painting, Inc. on November 11, 2022. ECF No. 4. Watters Painting, Inc. failed to respond to the Complaint under Federal Rule of Procedure 12(a)(1)(A). On February 6, 2023, the Clerk entered default against Watters Painting, Inc. ECF Nos. 6,7. On March 10, 2023, Plaintiffs filed an Amended Complaint, which added Mr. Watters as a Defendant and provided updated financial figures. ECF No. 8. Mr. Watters was served with the Complaint, Summons, and Civil Cover Sheet on April 27, 2023, but has similarly failed to respond or in any way defend this action. ECF No. 11. On May 24, 2023, the Clerk entered default against Mr. Watters. ECF Nos. 14,15. Subsequently, on June 23, 2023, Plaintiffs moved for a default judgment against both Watters Painting, Inc. and Mr. Watters. ECF No. 16.

In support of their Motion for Default Judgment, Plaintiffs attach a declaration and detailed spreadsheet by Mr. Michael O'Malley, the Collections Manager for Plaintiffs. ECF Nos. 16-5 at 1; 16-9. Mr. O'Malley alleges that, for the period of September 2014 through November 2022, Defendants owe $57,001.00 in unpaid contributions. *Id.* at 4. As of May 14, 2023, $7,861.84 in interest has accrued on these delinquent contributions and Defendants owe $11,299.76 for liquidated damages. *Id.* Mr. O'Malley has also identified that Defendants submitted only partial payment or submitted late payments for the months of May through August 2020, October 2022, and January 2023. *Id.* at 2. According to his calculations, Defendants still owe $216.14 in delinquent contributions for this period as well as $41.23 in interest and $1,911.86 in liquidated damages. *Id.* at 2,4.

Mr. O'Malley also alleges that Defendants have failed to make payments for March through May 2023. *Id.* at 3. While Plaintiffs cannot definitively calculate these delinquent contributions as Defendants have not produced the necessary records, Mr. O'Malley states that the Fund's collections procedures allow him to "estimate contributions for any months that are not reported by a signatory employer by using the average of the prior three reported months or the last reported month, whichever is higher." *Id.* at 3. Using the last reported month of January 2023 ($2,949.32), Mr. O'Malley estimates that Defendants owe $8,847.96 in unpaid contributions for this period as well as $49.41 in interest and $1,769.59 in liquidates damages. *Id.* at 3,4; ECF No. 16-9.

Plaintiffs also submit a declaration from Michele Stafford, Esq. as well as time entries detailing the attorneys' fees incurred in this matter from June 1, 2022 through May 31, 2023. ECF Nos. 16-3; 16-4. Plaintiff request that this Court award $13,860.50 in attorneys' fees and costs. ECF Nos. 16-3; 16-4; 16-5 at 4.

In total, Mr. O'Malley alleges that Defendants owe $66,065.10 in unpaid contributions, $7,977.59 in interest, $14,981.21 in liquidated damages, and $13,860.50 in attorneys' fees and costs. ECF Nos. 16-5 at 4; 16-9 at 1. Accordingly, Plaintiffs are asking that this Court enter judgment in their favor in the total amount of $102,884.40. ECF No. 16-51.

## DISCUSSION

**Standard of Review**

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining a default judgment. First, the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed.R.Civ.P. 55(a). Following the clerk's entry of default, "the plaintiff

[may] seek a default judgment." *Godlove v. Martinsburg Senior Towers, LP*, No. 14-cv-132, 2015 WL 746934, at *1 (N.D.W.Va. Feb. 20, 2015); Fed.R.Civ.P. 55(b). "Entry of default judgment is left to the discretion of the court." *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005). While "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits," judgment by default "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 421 (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494-95 (D.Md. 2002)).

When reviewing a motion for default judgment, courts accept as true the well-pleaded allegations in the complaint. *Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). "It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Int'l Painters & Allied Traders Indus. Pension Fund. v. Paper Master LLC*, No. TDC-19-81, 2019 WL 3296716, at *2 (D.Md. July 22, 2019) (citation omitted). In making this determination, courts in this district generally apply the standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to determine whether the allegations in the complaint are "well-pleaded." *See Ins. Co. of the West v. Prime Logistics, LLC*, No. TDC-22-2534, 2023 WL 4230860, at *2 (D.Md. June 27, 2023); *United States v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *2-3 (D.Md. Oct. 27, 2011).

If a plaintiff establishes liability, the court "must then turn to the determination of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F.Supp.2d 680, 684 (D.Md. 2013) (citing *Ryan*, 253 at 780-81). District courts must "make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* To make a damages determination, the court may conduct an evidentiary hearing. Fed.R.Civ.P. 55(b)(2)(A). However, a hearing is not necessary so long as

5

there is an "adequate evidentiary basis in the record for an award." *Paper Master LLC*, 2019 WL 3296716, at \*2; *see Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing, however. Rather, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum.").

**Liability**

In Counts I and II, Plaintiffs allege that Defendant Watters Painting, Inc. failed to remit numerous payments to the Fund and failed to comply with the audit requirements of the CBA. ECF No. 8 at ¶¶ 18-28. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. §1145. "The Supreme Court has found that these sections of ERISA 'provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions.'" *Capital Restoration & Painting Co.*, 919 F.Supp.2d at 685-86 (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). If liability is established, ERISA allows for the recovery of damages. 29 U.S.C. §1132(g)(2).

Similarly, the Labor Management Relations Act ("LMRA") provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §185(a). The LMRA "does not direct specific damages for violations of a collective bargaining agreement, but grants standing to third-party beneficiaries of such an agreement to bring an action to enforce its terms and seek remedies for its breach." *Tr. of the National Automatic Sprinkler Indus. Welfare Fund v. T&L Comms., Inc.*, No. GJH-19-476, 2020 WL 618678, at \*6 (D.Md. Feb. 10, 2020).

Here, Plaintiffs, in their Amended Complaint, allege that the Fund is a multiemployer benefit fund and an employee benefit plan as defined by 29 U.S.C. §1002(2). ECF No. 8 at ¶ 1. They further allege that Defendant Watters Painting, Inc. is an employer that is a party to a CBA which requires that it make monthly contributions to the Fund based on the hours worked by its employees and to timely produce certain payroll and administrative records. *Id.* at ¶¶ 12-13. Defendant Watters Painting, Inc. has, according to Plaintiffs, failed to accurately remit the required contributions, failed to pay liquidated damages and interest on its delinquent contributions, and failed to produce the records necessary to conduct an audit. *Id.* at ¶¶ 14-17. These allegations, accepted as true, are sufficient to show that Defendant Watters Painting, Inc. has defaulted on its obligations under the CBA in violation of ERISA and LMRA. *See Hudson Cnty. Carpenters Local Union No. 6. v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565, 568 (D.N.J. 2000) ("It is well established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA §515 and a violation of LMRA §[185].").

Plaintiffs also allege, in Count III of their Amended Complaint, that Defendant Mr. Watters is personally liable to the Fund as he has violated his fiduciary duties. ECF No. 8 ¶¶ 29-35. ERISA defines a fiduciary not "in terms of a formal trusteeship, but in *functional* terms of control and authority over the plan[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Under the statute, a person is a fiduciary if "he exercises any discretionary authority or discretionary control respecting the management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. §1002(21)(A).

"ERISA imposes strict fiduciary duties to 'prevent abuses of the special responsibilities borne by those dealing with the plans,' such a 'self-dealing' and 'misappropriation of plan funds.'" *Acosta v. WH Admins, Inc.*, 449 F.Supp.3d 506 (D.Md. 2020) (quoting *Fort Halifax Packing Co.,*

7

*Inc. v. Coyne*, 482 U.S. 1, 15 (1987)). Plan fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan" and must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. §1104(a)(1)(A)-(B), (D). Fiduciaries who violate their duties are "personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" 29 U.S.C. § 1109(a).

Here, Plaintiff allege that, as the owner and executive of Watters Painting, Inc., Mr. Watters was responsible for complying with the CBA. ECF No. 8 at ¶¶ 31-32. Plaintiffs also allege that Mr. Watters "caused contributions to be withheld or unpaid" and "authorized or acquiesced to the use or diversion of [] plan assets . . . for other purposes." *Id.* at ¶ 32. These allegations, accepted as true, are sufficient to establish that Mr. Watters was a fiduciary of the Fund by virtue of his position and responsibilities with Watters Painting, Inc. and that he violated his duties by misappropriating the Funds' contributions.

Accordingly, accepting the factual allegations in Plaintiffs' Amended Complaint as true, Plaintiffs have sufficiently pleaded Counts I, II, and III, and I recommend that the Court enter a default judgment in favor of Plaintiffs and against the Company and Mr. Watters.

**Damages**

Having established liability, the Court turns to the amount of damages owed to Plaintiffs. Under Section 502(g)(2) of ERISA, an employer who fails to make contributions required by Section 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. §1132(g)(2). Similarly, the CBA and the Trust Agreement provide for the recovery of unpaid contributions, interest on the unpaid contributions, liquidated damages, and the expenses of

collection (including attorneys' fees). ECF Nos. 16-6 at 5; 16-7 at 4; 16-8 at 3. As such, the Court interprets the CBA and Trust Agreement to provide the same default remedies as ERISA. ECF No. 16-2 at 5-8; 29 U.S.C. §1132(g).

*Unpaid Contributions*

According to Mr. O'Malley's declaration and the detailed spreadsheet audit attached thereto, Defendants owe **$57,001.00** in unpaid contributions for the period of September 2014 through November 2022. ECF No. 16-5 at 4. This spreadsheet also reveals that Defendants failed to remit a portion of their contributions in May, June, July, August, and October 2022 and in January 2023. ECF No. 16-5 at 2. Mr. O'Malley has identified **$216.14** in unpaid contributions for these months.

Plaintiffs also seek to recover delinquent contributions for March, April, and May 2023. ECF No. 16-2 at 6-7. The exact amount of damages for these dates cannot, however, be calculated as Defendants have failed to submit remittance reports for these months as required by the CBA. ECF No. 16-5 at 3. Despite these documentary shortcomings, Mr. O'Malley explains in his declaration that, under its "collection procedures," the Fund is permitted to "estimate contributions for any months that are not reported by a signatory employer by using the average of the prior three reported months or the last reported month, whichever is higher." *Id.* at 3. This Court has previously recognized that, in the absence of the necessary documents, multiemployer funds may estimate the amount of delinquent contributions. *See Tr. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Metro. Fire Protection Sys.*, No. DKC-21-1034, 2023 WL 2894952, at *3 (D.Md. April 11, 2023); *Int'l Painters & Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, No. JKB-11-2117, 2012 WL 251963, at *3 (D.Md. Jam 24, 2012). Here, in its last reported month, Defendants owed $2,949.32 in contributions. ECF Nos. 16-5 at 3; 16-9. Therefore,

Defendants owe $2,949.32 in contributions for each estimated month (March, April, and May 2023) for a total of **$8,847.96** in estimated delinquent contributions.

In total, Plaintiffs allege that Defendants owe **$66,065.10** in unpaid contributions. Based on the results of the partial audit, Plaintiff's estimates, and Mr. O'Malley's declaration, these figures appear to have been properly calculated. Accordingly, I recommend that this Court grant the full amount of the unpaid contributions alleged by Plaintiffs.

*Interest*

ERISA provides that Plaintiffs are entitled to recover "interest on the unpaid contributions." 29 U.S.C. §1132(g)(2)(B). The rate of this interest is "determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." *Id.* According to Mr. O'Malley's affidavit, based on the variable IRS interest rate, Plaintiffs are owed **$7,861.84** in interest for Defendants' unpaid contributions from September 2014 through January 2023 and **$41.23** in interest for Defendants' contribution shortfalls from May-August 2022, October 2022, and January 2023. ECF No. 16-5 at 2. In addition to the interest due and owing, Plaintiffs also request that the Court order that interest continue accruing at a rate of 10% per annum[1] from May 14, 2023 until paid.

Plaintiffs also seek to collect interest on Defendants estimated unpaid contributions for March-May 2023. *Id.* at 4. However, unlike the interest described above, Plaintiffs' assert that this interest should be calculated at a 10% per annum rate as the Pension Funds' Board of Trustees replaced the IRS variable rate with this fixed rate on February 1, 2023. *Id.* at 16-5 at 3. Interest for this period has been calculated at **$74.52** and Plaintiffs request that this interest continue to accrue

---

[1] As explained below, on February 1, 2023, "the Pension Fund's Board of Trustees elected to change the interest rate to 10%." ECF No. 16-5 at 3.

at a rate of 10% per annum from June 20, 2023 until paid.

Taken together, Plaintiffs are requesting a total of **$7,977.59** in interest. This figure appears to have been calculated properly and I recommend that it be awarded as requested. I also recommend that the Court order that the interest continue to accrue at 10% per annum from the dates identified by Plaintiffs.

### *Liquidated Damages*

Plaintiffs also seek liquidated damages. In contribution collections cases, ERISA provides for "an amount equal to the greater of . . . (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent[.]" 29 U.S.C. §1132(g)(2)(c). The CBA in the instant case allows for liquidated damages of 20% of the delinquent contributions. ECF No. 16-5 at 2. Based on this 20% rate, Plaintiffs seek **$11,299.76** in liquidated damages for September 2014-November 2022, **$1,769.59** in liquidated damages for March-May 2023, and **$1,911.86** in liquidated damages on contribution balances for May-August 2022, October 2022, and January 2023. ECF No. 16-5 at 2-3. Accordingly, Plaintiffs are asking for a total of **$14,981.21 in liquidated damages**. These amounts appear to have been correctly calculated, and I recommend that the Court award liquidated damages as requested.

### *Attorneys' Fees and Costs*

Plaintiffs also seek to recover reasonable attorneys' fees and costs. ECF No. 16-2. Both ERISA and the relevant CBA allow for this relief. 20 U.S.C. §1132(g)(2)(D); ECF Nos. 16-6 at 5; 16-7 at 4. The Court must, therefore, determine whether the requested fees and costs are reasonable.

"In calculating an award of attorney's fees, a court must first determine a loadstar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v.*

11

*Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Once the lodestar amount has been calculated, "the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative." *Paper Master LLC*, 2019 WL 3296716, at *4. In making these determinations, the United States Court of Appeals for the Fourth Circuit has "instructed that a district court's discretion should be guided by the following twelve factors":

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). This Court also frequently looks to Appendix B to the Local Rules, titled "Rules and Guidance for Determining Attorneys' Fees in Certain Cases," for guidance in determining the reasonableness of an hourly rate. Appendix B includes a listing of hourly rates on a sliding scale based upon an attorney's years of service that are deemed "presumptively reasonable for lodestar calculations" in this District. *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 412 (D.Md. 2014).

### *The Hourly Rates*

Plaintiffs are represented in this matter by Tucker Arensberg, LLC, which is a "mid-size Pittsburgh Pennsylvania law firm . . . that has, for several decades, successfully represented its clients in numerous ERISA actions." ECF No. 16-3 at 2. Michele Stafford is a partner in the firm's ERISA litigation group and is staffed on this matter. *Id.* She has been licensed to practice law since

1994 and has worked on ERISA cases since 2003. *Id.* In addition to lecturing on a variety of ERISA topics around the country, Ms. Stafford is "primarily responsible for the dozens of collection cases [the] firm handles for Plaintiffs[.]" *Id.* at 2-3. Ms. Stafford's time was billed at the rate of $310.00 per hour through December 31, 2022 and has been billed at $325.00 per hour from January 1, 2023 to the present. *Id.* at 3. Given that Ms. Stafford has been admitted to the bar for 19 years, these rates are well within the guidelines provided in Appendix B.

The firm has also staffed an associate, Mr. Patrick J. Kukalis, on this matter. *Id.* at 4. His time was billed at a rate of $225 per hour, which comports with the rates set forth in Appendix B for attorneys who, like Mr. Kukalis, have been admitted to the bar for less than five years. *Id.* Further, the firm staffed a paralegal, Ms. Elise Cotterill, on this matter. *Id.* Her time was billed at a rate of $175.00 per hour through December 31, 2022 and has been billed at $185.00 per hour from January 1, 2023 to the present. *Id.* at 3-4. While Ms. Cotterill's rates exceed the high end of the Appendix B rates for paralegals by $25 and $35 respectively, I find that they are reasonable given that Ms. Cotterill has "almost twenty years of experience as a paralegal and/or as a legal assistant." *Id.* at 4.

### *The Time Spent*

Based on the factors endorsed by the Fourth Circuit, I find that the amount of time billed on this matter was reasonable. The billing records submitted by Plaintiffs reflect that Ms. Stafford billed approximately 15 hours on the matter, Mr. Kukalis billed approximately 25 hours, and Ms. Cotterill billed approximately 18 hours. ECF No. 16-4. The firm, therefore, billed between 55 and 60 hours total on this matter. While this may be more hours than a normal ERISA collection case, other Courts in this District have found similar expenditures of time reasonable. *See Int'l Painters & Allied Trades Indus. Pension Fund v. 3R Painting & Contracting Co.*, No. RDB-12-272, 2013

WL 424694, at *9 (D.Md. Jan 31, 2013) (finding that 54.6 hours of billed time in an ERISA collections case was reasonable). The additional hours billed in this matter were warranted given the extent and sporadic nature of the delinquent contributions, Defendants' refusal to comply with mandated audit procedures, and the difficulty of calculating interest and liquidated damages across such a long period of time.

Accordingly, because the hourly rates and time spent by Ms. Stafford, Mr. Kukalis, and Ms. Cotterill were reasonable, I recommend that the Court award Plaintiffs the full amount of attorneys' fees requested, **$13,423.50.**

*The Costs*

Plaintiffs also request **$437.00** in costs. ECF No. 16-4 at 1. The time entries submitted by Plaintiffs reflect that Tucker Arensberg, LLC spent $402.00 for filing fees and $35.00 for messenger services. ECF No. 16-4 at 15, 29. These are reasonable expenses incurred by attorneys in the representation of their clients. Accordingly, I recommend that the Court grant these costs as requested.

**Injunctive Relief**

Plaintiffs also request certain injunctive relief allowed under the terms of the CBA. ECF No. 16-2 at 13. In particular, Plaintiffs ask that this Court order Defendants to produce all documents "required to complete the audit of its payroll records for the period from January 1, 2016 through the date of the inspection" and to "comply with [the] audit." ECF No. 16-1 at 2.

ERISA allows courts to order "such . . . equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). Courts in this District have previously ordered defendants in ERISA contribution cases to "produce all of its payroll books and financial records to allow a contribution compliance audit." *Int'l Painters & Allied Trades Indus. Pension Fund v. Williamsport Mirror &*

*Glass Co.*, No. ELH-18-2333, 2015 WL 567304, at *5 (D.Md. Feb 9, 2015). *See also Int'l Painters & Allied Trades Indus. Pension Fund v. DLC Corp.*, No. WDQ-11-1938, 2012 WL 1229491, at *7 (D.Md. April 11, 2012) (Recommending that the Court grant the plaintiff's request "for an injunction requiring defendant to submit to an audit"). In addition to ERISA's statutory authority, Defendants are contractually obligated to furnish the Trustees of the Fund with "information such as the names of all subcontractors, affiliates, employees . . ., wages earned and hours worked by employees" and are required to submit to an audit of their "books and records, including books and records of affiliated employers[.]" ECF No. 16-7 at 4-5.

Accordingly, the undersigned recommends that the Court grant Plaintiffs requested injunctive relief and order that Defendants produce all documents required to complete the audit of its payroll records from January 1, 2016 to the date of the inspection within 14 days of the Court's order.

## CONCLUSION

For the reasons set forth above, I recommend that the Court GRANT Plaintiffs' Motion for Default Judgment (ECF No.16). I also recommend that the Court award damages as follows:

| | |
|---|---|
| Unpaid Contributions (September 2014-November 2022) | $57,001.00 |
| Estimated Contributions (March-May 2023) | $8,847.96 |
| Contribution Balances (May 2022-August 2022, October 2022, January 2023) | $216.14 |
| **Delinquent Contribution Total** | **$66,065.10** |
| Interest on Unpaid Contributions (September 2014-November 2022) | $7,861.84 |
| Interest on Estimated Contributions (March-May 2023) | $74.52 |
| Interest on Contribution Balances (May 2022-August 2022, October 2022, January 2023) | $41.23 |

| Interest Total | $7,977.59 |
|---|---|
| Liquidated Damages on Unpaid Contributions (September 2014-November 2022) | $11,299.76 |
| Liquidated Damages on Estimated Contributions (March-May 2023) | $1,769.59 |
| Liquidated Damages on Contribution Balances (May 2022-August 2022, October 2022, January 2023) | $1,911.86 |
| **Liquidated Damages Total** | $14,981.21 |
| **Attorneys' Fees and Costs** | $13,860.50 |
| **Total** | $102,884.40 |

In addition to the damages detailed above, the undersigned also recommends that the Court order that interest continue to accrue at a rate of 10% per annum from May 14, 2023 for the reported contributions and June 20, 2023 for the estimated contributions. Finally, I recommend that the Court order that Defendants produce all documents required to complete an audit of its payroll records within 14 days of the Court's decision.

Any objections to this Report and Recommendation must be served and filed within 14 days pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

Date: 26 July 2023

A. David Copperthite
United States Magistrate Judge